IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCIOLI TURCO, INC. and | : | |
| 915 SPRING GARDEN ASSOCIATES LP, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| PHILADELPHIA & READING RAILROAD | : | NO. 21-563 |
| CO. and READING INTERNATIONAL, INC. | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                                       **April 19, 2023**

Presently before the Court is Petitioners' Motion for Remand. For the following reasons, the Motion for Remand will be denied.

**I.    BACKGROUND**

Petitioners Scioli Turco, Inc. and 915 Spring Garden Associates, LP bring this matter against the alleged owners of an apparently abandoned and dilapidated property located at 901 Spring Garden Street, Philadelphia, which used to be a rail station known as the 9th Street Branch or Viaduct ("the Property"). (Mot. to Remand, ECF No. 14.) Petitioners—an economic development organization and the Property's immediate neighbor—bring this action under the Abandoned and Blighted Property Conservatorship Act, P.L. 1672, No. 135, 68 P.S. § 1101 et seq. (2008) ("Act 135"), to declare the Property "blighted and abandoned" as defined in the Act in an attempt to appoint a conservator of the property for rehabilitation purposes. *Id.*; (ECF No. 1.)

This matter was originally filed in Pennsylvania state court, but Respondents removed the Petition to federal court. (*Id.*) Respondents filed a Motion to Dismiss, and Petitioners filed a Motion to Remand. (ECF Nos. 13, 14.) A telephone conference was held to discuss partial

demolition of the Property scheduled by Respondents and briefing on the motions.  (ECF No. 22.)

Respondents' Motion to Dismiss was filed before Petitioners' Motion to Remand.  Nevertheless, we are obligated to decide Petitioners' Motion to Remand first, as it affects this Court's subject matter jurisdiction.  *See, e.g.*, *Chrustowski v. Cumberland Cnty. Guidance Ctr.*, 2006 U.S. Dist. LEXIS 94318, 2006 WL 3780555, at *2 (D.N.J. Dec. 20, 2006) ("Once a motion to remand has been filed, it is incumbent upon the Court to proceed to decide that motion first because, if granted, the case is remanded . . . to the court of initial jurisdiction").  We now turn to the issues presented in the Motion to Remand.

## II.     LEGAL STANDARD

After a case is removed to federal court, a plaintiff may file a motion to remand based on a defect or lack of subject matter jurisdiction.  28 U.S.C. § 1447(c).  "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court."  *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).  A United States district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  *Id.* § 1331.  District courts also have "original jurisdiction of all civil actions where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a).  Matters outside the pleadings may be considered when deciding whether a court has subject matter jurisdiction.  *Perazzo v. Reliance Standard Life Ins. Co.*, 2001 WL 1468287, at *3 (E.D. Pa. 2001).

## III.    DISCUSSION

In their Motion for Remand, Petitioners assert that the Court has no subject matter

jurisdiction based on either federal question jurisdiction or diversity jurisdiction.  Specifically, they argue that there is no federal question jurisdiction because Act 135 is not completely preempted by the Interstate Commerce Commission Termination Act of 1995 ("ICCTA").  They also argue that there is no diversity jurisdiction because Philadelphia & Reading Railroad Company ("Philadelphia & Reading RR Co.") is a citizen of Pennsylvania, which destroys complete diversity between the parties.  Respondents counter that there is federal question jurisdiction because the ICCTA completely preempts Act 135 and, alternatively, that diversity jurisdiction exists because Philadelphia & Reading Railroad Company is a nominal party whose citizenship should not be considered for diversity purposes.

For the reasons that follow, we find that diversity jurisdiction exists because Philadelphia & Reading RR Co. is a nominal party and should not be considered in the diversity determination, and all other requirements for diversity jurisdiction are met.  Because we find that removal is proper based on diversity jurisdiction, we need not analyze whether we also have federal question jurisdiction.  *See, e.g.*, *Sayles v. Allstate Ins. Co.*, No. 16-1534, 2016 U.S. Dist. LEXIS 121221, at *2 (M.D. Pa. Sep. 8, 2016) ("Because this Court finds removal based on diversity jurisdiction to be proper, it need not analyze federal subject matter jurisdiction based on CAFA."); *Jubelt v. United Morg. Bankers, Ltd.*, No. 13-7150, 2014 U.S. Dist. LEXIS 23828, at *8 (D.N.J. Feb. 7, 2014) ("As this Court finds that the District Court has subject matter jurisdiction over this case based on diversity of citizenship, it need not consider whether Plaintiff's claims also involve a federal question.).  Accordingly, Petitioners' Motion to Remand will be denied.

      **A.**    **The Court has diversity jurisdiction.**

The Court has diversity jurisdiction over this matter if complete diversity exists and the

amount in controversy is greater than $75,000.  The only question we must resolve for the diversity jurisdiction determination here is whether Philadelphia & Reading RR Co. is a nominal party or a real party in interest.  The parties agree that Reading International, Inc. is a citizen of Nevada and California and petitioners Scioli Turco, Inc. and 915 Spring Garden Associates LP are citizens of Pennsylvania.  There is also no dispute over the amount in controversy; Petitioners proposed plan for rehabilitation would cost $415,000, exceeding the $75,000 requirement.  (ECF No. 1 at 54.)

Diversity jurisdiction exists where there is "complete diversity" amongst the parties; complete diversity means that "no plaintiff can be a citizen of the same state as any of the defendants."  *Johnson v. Smithkline Beecham Corp.*, 724 F.3d 337, 346 (3d Cir. 2013).  However, the parties must be "real and substantial parties to the controversy" for their citizenship to be considered in the complete diversity determination.  *Id.* at 358.  "Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."  *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 460 (1980).  Nominal parties "tend to be formal parties without any stake in the outcome of the litigation, such as a now-extinct corporation that has been entirely dissolved into another, surviving corporation."  *Bancorp, Inc. v. Yaron*, No. 14-7159, 2015 WL 4876330, at *2 (E.D. Pa. Aug. 14, 2015); *Johnson*, 724 F.3d at 359 (Nominal parties are parties who have "no actual interest in the outcome of the litigation." (quoting *Bumberger v. Ins. Co. of N. Am.*, 952 F.2d 764, 767 (3d Cir. 1991))).  The removing party has the burden of proving that a party is nominal.  *See Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

Here, Petitioners argue that complete diversity is destroyed because Philadelphia & Reading RR Co. is a Pennsylvania citizen.  Respondents assert that Philadelphia & Reading RR

Co. is a nominal party which should not be considered for the complete diversity analysis.  We agree.  After a comprehensive review of Philadelphia & Reading RR Co.'s history, a survey of local case law referencing Philadelphia & Reading RR Co., and analyzing the parties' exhibits, we conclude that Philadelphia & Reading RR Co. is a nominal party and that it therefore does not destroy complete diversity.

The history of the Philadelphia & Reading RR Co. supports the conclusion that it is a nominal party and not a party in interest to this litigation.  The Philadelphia & Reading RR Co. was chartered by a special act of the Pennsylvania General Assembly in 1833 and conducted business as a railroad carrier for nearly 30 years.  P.L. 1832-33, No. 76.  (*See* Defs.' Opp'n Ex. F.)  This legislative charter entitled Philadelphia & Reading RR Co. to "perpetual succession" and did not include a specific procedure for dissolution.  (*Id.*)  In 1888, Philadelphia & Reading RR Co. mortgaged all of its properties and franchises that it acquired since it started doing business in 1833.  *Phila. & Reading Rwy. Co. v. City of Philadelphia*, 228 Pa. 505, 508 (1910).  Thereafter, Philadelphia & Reading RR Co. defaulted on its interest payments on the bonds of the mortgage, which led to the sale of the mortgaged property "to representatives of the creditors and stockholders of" the Philadelphia & Reading RR Co. "under a scheme of reorganization." *United States v. Reading Co.*, 253 U.S. 26, 45 (1920).

This led to decades of antitrust litigation and the United States Supreme Court's 1920 decision in *Reading Company*.  *Id*.  During this litigation, the Philadelphia and Reading Railway Company ("Reading Company") was formed "for the purpose of taking, holding, using and operating all the properties and the rights that had been embraced in the said mortgage."  *Phila. & Reading Rwy. Co.*, 228 Pa. at 508.  All the properties and rights of Philadelphia & Reading RR Co. were transferred to the Reading Company.  *Id.*  The Reading Company was also formed "for

the purpose of carrying out, in some of its details, the reorganization of the [Philadelphia & Reading RR Co.]." *Id.*  However, a successor to the Philadelphia & Reading RR Co. was never identified.  Years after the sale of the Philadelphia & Reading RR Co.—in the 1920s—the United States Supreme Court repeatedly referred to the Philadelphia & Reading RR Co. as the "former Reading Railroad Company" or the "former Railroad Company." *Reading Co.*, 253 U.S. at 47.  An independent search for Philadelphia & Reading RR Co. did not reveal any mention of the railroad in litigation after this date.

In further support of their position that the Philadelphia & Reading RR Co. is a nominal party, Respondents argue that "[a]t no point in the 20th or 21st centuries has [the Philadelphia & Reading RR Co.] owned the Property which Petitioners seek to possess [in this matter]."  (Defs.' Opp'n to Mot. to Remand at 15.)  To the extent that the Philadelphia City Records reflect Philadelphia & Reading RR Co. as the Property owner as of 1976, we are satisfied that this must be a mistake.  (*See* Pls.' Mot. to Remand Ex. 1, ECF No. 14 (listing sale date as 3/31/1976 for $4).)  A City Ordinance enacted on December 26, 1890 required Philadelphia & Reading RR Co. to "join with" the unrelated Philadelphia and Reading Terminal Railroad Company to build the Viaduct Property at issue in this matter. 1890 *Ordinances of the City of Philadelphia* 420, 424. [1] However, Respondents represent that Philadelphia & Reading RR Co. "has not had any shareholders, directors, officers, or employees for at least 100 years."  (Defs.' Opp'n at 16.)  According to their amended Rule 7.1 corporate disclosure statement "Respondent Philadelphia & Reading Railroad Company was incorporated in 1833 and ceased to exist in or around 1896.  On information and belief, Philadelphia & Reading Railroad Company has no successor."  (ECF No.

---

[1] For the purposes of determining jurisdiction on a motion to remand, a court may consider matters outside the pleadings. *Perazzo*, 2001 WL 1468287, at *3.

11.)[2]

We are therefore satisfied that Philadelphia & Reading RR Co. is a now-extinct corporation whose assets have been absorbed by another corporation, Reading International, Inc. (*See* Deed, Defs' Opp'n to Mot. to Remand Ex. C (retaining the Property and stations and transferring an easement to Conrail subject to the Regional Rail Reorganization Act of 1973 ("the 3R Act")).)  Even if the 1986 foreclosure sale did not end the 1833 charter of the Philadelphia & Reading RR Co., non-use and neglect of the charter for more than 100 years certainly does.  *Chincleclamouche Lumber & Boom Co. v. Commonwealth*, 100 Pa. 438, 442 (1882) (noting that non-use and neglect of a legislative corporate charter are recognized as "ancient and undoubted cause[s] for forfeiting a charter").

Accordingly, Philadelphia & Reading RR Co. cannot be a party in interest to this litigation, as it is "without any stake in the outcome of the litigation" as a "now-extinct corporation" absorbed by another.  *Bancorp, Inc.*, 2015 WL 4876330, at *2; *Johnson*, 724 F.3d at 359.  The Philadelphia & Reading RR Co. is a nominal party and does not factor into our diversity jurisdiction analysis.  *See Gentry v. Sikorsky Aircraft Corp.*, 383 F. Supp. 3d 442, 451-52 (E.D. Pa. 2019) (finding Keystone Helicopter Corporation to be a "now-extinct corporation," and therefore a nominal party).  Without Philadelphia & Reading RR Co., there is complete diversity between the parties.  The parties agree that Reading International, Inc. is a citizen of Nevada and California and petitioners Scioli Turco, Inc. and 915 Spring Garden Associates LP are citizens of Pennsylvania.  The motion to remand will be denied.

---

[2] Petitioners challenge this change from the first Rule 7.1 filing.  However, courts have considered amended disclosures for diversity purposes.  *See Misle Props., LLC v. LBUDS 2004-C2 Cranberry Retail GP, LLC*, No. 18-3121, 2018 WL 65229132 (D. Neb. Dec. 12, 2018).

## IV. CONCLUSION

For the foregoing reasons, the Motion for Remand is denied.  An appropriate order follows.

**BY THE COURT:**

**_/s/ R. Barclay Surrick_**
**R. BARCLAY SURRICK, J.**